UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ORLANDO LARRY,**

                      Plaintiff,

v.                                          **Case No. 16-cv-1108-pp**

**MICHAEL MEISNER, et al.,**

                      Defendants.

---

**DECISION AND ORDER GRANTING THE PLAINTIFF'S
MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE
FILING FEE (DKT. NO. 2) AND SCREENING THE COMPLAINT**

---

The plaintiff, who is representing himself, is a former Wisconsin state prisoner, who at the relevant time was incarcerated at Columbia Correctional Institution. He currently is incarcerated at Gilmer Federal Correctional Institution. Dkt. No. 1 at 1. He filed this lawsuit under 42 U.S.C. §1983, Dkt. No. 1, along with a motion for leave to proceed without prepayment of the filing fee, Dkt. No. 2. This order resolves that request and screens the plaintiff's complaint.

    I.    <u>Motion for Leave to Proceed without Prepayment of the Filing Fee</u>

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the case filing fee, as long as he meets certain

1

conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b).

On August 23, 2016, U.S. Magistrate Judge David E. Jones (the assigned judge at that time) ordered the plaintiff to pay an initial partial filing fee of $27.47. Dkt. No. 5. On September 2, 2016, the plaintiff filed his refusal to consent to jurisdiction by a magistrate judge, so the clerk's office reassigned the case to this court. The plaintiff paid the initial partial filing fee on September 19, 2016. Accordingly, the court will grant the plaintiff's motion. The court will require the plaintiff to pay the remainder of the filing fee over time as set forth at the end of this decision.

II. Screening the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327.

2

"Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions

3

Case 2:16-cv-01108-PP   Filed 09/27/16   Page 3 of 15   Document 8

"Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions

with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

**A. The Plaintiff's Allegations**

The plaintiff alleges that on August 2, 2011, during the month of Ramadan, Officer Goldsmith[1] "summonsed his supervisors" to place him in segregation. Dkt. No. 1 at 3. The plaintiff states that Goldsmith had him placed in segregation "for praying under false pretenses that he ordered [the plaintiff] to stop praying and [the plaintiff] would not."[2] Id. Lt. Kevin Boodry,

---

[1] In the complaint, the plaintiff names "John Doe (i.e. Officer Goldsmith)." Dkt. No. 1 at 2. The caption does not include a John Doe and there are no allegations in the complaint against a John Doe, so the court assumes that the plaintiff used "John Doe" only because he does not know Goldsmith's first name, and not because he intended to name an additional, unidentified individual as a defendant in this lawsuit.

[2] The cannot tell whether the plaintiff is saying that Goldsmith falsely alleged that the plaintiff was praying under false pretenses, or that Goldsmith falsely

4

accompanied by several correctional officers, placed the plaintiff in mechanical restraints and escorted him to segregation unit DS1, where he was strip searched and placed into a cell. Id.

Goldsmith wrote a major conduct report, stating that the plaintiff disobeyed an order, was disruptive, and engaged in group resistance and petitioning. Id. at 3, 6. The plaintiff states he was informed of his hearing rights and given a copy of the conduct report, although he does not state who informed him or provided him with a copy. Id. at 6. The plaintiff states he requested several witnesses to be present (he does not state to whom he made the request or whether his request was granted), and asked Security Director Janel Nickels "to review [his] placement in DS1 and to provide in camera inspection for evidence at [his] disciplinary hearing."[3] Id. at 6, 4. Nichols did "accommodate" the plaintiff's request. Id. at 4.

Captain Donald Morgan found the plaintiff guilty at the disciplinary hearing and sentenced him to sixty days in segregation. Id. Correctional Officer Grant (who is not named as a defendant) escorted the plaintiff to segregation unit DS2 and placed the plaintiff in a one-man cell. Id. Grant informed the

---

alleged that the plaintiff refused to stop praying when Goldsmith told him to stop.

[3] This allegation is vague; the court assumes the plaintiff means that he requested that Nickels independently review the evidence presented at the disciplinary hearing. The court does not read this to mean that the plaintiff was prevented from viewing the evidence presented at the hearing. On page 6 of the plaintiff's complaint, he does vaguely state that he was "denied video evidence," but he does not state who denied him such evidence, whether the hearing officer relied on the evidence, or even what the video evidence that he was allegedly denied showed.

5

plaintiff that he would sleep on the floor[4] by the toilet because the cell was already occupied. Id. The plaintiff explained that he couldn't sleep on the floor because he has back problems, and he expressed concern that the cell was too small to house him, another inmate, and all of their possessions. Id. He asked Grant if he could go back to DS1. Id. Grant agreed, but warned the plaintiff that he might receive a conduct report. Id.

The plaintiff then received another major conduct report. Id. According to the plaintiff, the report falsely accused him of refusing to let Grant take the cuffs off and refusing to stay in DS2. Id. At the disciplinary hearing, Lieutenant Thomas Schoenburg found the plaintiff guilty and sentenced him to 120 days in segregation. Id. at 5. The plaintiff was escorted back to unit DS2 and forced to sleep on the floor, which the plaintiff states aggravated his injured back.[5] Id.

The plaintiff states that while he was in segregation he was not allowed to attend Friday Jumuah Services, he could not make wudu for purification, he was not allowed to participate in the Eid Al Fitr feast, the Eid ul Adha feast, or group prayers, and he was fed bagged meals once per day during the entire month of Ramadan. Id. The plaintiff does not clarify who denied him the opportunity to participate in these activities. Also, the plaintiff states that the Program Review Committee increased his custody level from minimum to maximum. Id.

---

[4] The plaintiff does not clarify if he was instructed to sleep directly on the floor or on a mattress on the floor.
[5] The plaintiff does not state who escorted him back to DS2, nor does he allege whether he complained to anyone other than Grant about his back problems.

6

## B. The Court's Analysis

The plaintiff states that the defendants violated his right to freedom of religion under the First Amendment, his right to be free from cruel and unusual punishment under the Eight Amendment, and his due process rights under the Fourteenth Amendment. Id. at 6.

### 1. *Defendants Nickels and Meisner*

The plaintiff alleges that he asked Nickels, the security director, to independently review the evidence presented at the disciplinary hearing (and that Nickels declined to do so), and that Meisner affirmed the decisions of the disciplinary hearings officers. Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. Hildebrandt v. Illinois Dept. of Natural Resources, 347 F.3d 1014, 1039 (7th Cir. 2003). While the plaintiff argues that the defendants who denied him video evidence and found him guilty on what he argues were false allegations violated his due process rights, he does not allege that Nickels or Meisner were involved in making those decisions. He complains only that Nickels failed to accommodate his request to separately review the evidence, and that Meisner failed to overturn the decisions.

Supervisory officials—superintendents of prisons, wardens, complaint examiners--are "entitled to relegate" to others day-to-day duties, such as conducting disciplinary hearings. Burks v. Raemisch, 555 F.3d 592, 595–96

7

(7th Cir. 2009). And even if Captain Morgan was wrong in finding the plaintiff guilty, and Nickels somehow knew that, the "contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, [the Monnell v. Dep't of Social Services of City of New York, 436 U.S. 658 (1978)] rule that public employees are responsible for their own misdeeds but not for anyone else's." Id. at 596. Similarly, Meisner did not become liable when he ruled against the plaintiff on his grievance because doing so did not cause or contribute to the alleged constitutional violation. Id.; George v. Smith 507 F.3d 605, 609-10 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."). Because the plaintiff has not alleged any person involvement by these defendants in the alleged due process violations, the court will dismiss them from the lawsuit.

    2.  *Defendants Morgan and Schoenburg*

Disciplinary segregation can trigger due process protections. Marion v. Columbia Correction Inst., 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). When making the determination whether an inmate was entitled to such protections, courts should analyze "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." Id. If conditions in segregation are significantly harsher than those in the normal prison environment, then a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. Id. at 697-98.

8

Here, the plaintiff alleges that he was subjected to disciplinary segregation sentences of sixty days and 120 days. These are not extreme periods of time, and standing alone, do not trigger due process rights. Id. at 697 (citing Whitford v. Boglino, 63 F.3d 527, 533 (7th Cir. 1995)). The plaintiff also alleges, however, that he was forced to share a one-man cell with another inmate and to sleep on the floor despite back problems, and that he was deprived of the opportunity to participate in religious feasts, prayers and rituals. Taken as a whole, the plaintiff's allegations are sufficient at the screening stage to trigger due process protections, because the conditions he endured while in segregation may have "impose[d] atypical and significant hardship[s] on [him] in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472 (1995).

Although the plaintiff's allegations may trigger due process protections, he fails to sufficiently allege that those protections were violated. In Wolff, the Supreme Court held that,

> [b]efore being deprived of a protected liberty interest [(i.e., here, to remain in general population)], a prisoner is entitled to (1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir. 1992) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974).

The plaintiff's complaint provides little description of the disciplinary hearings that resulted in his being moved to segregation. He states that he

9

received a copy of the conduct report and was informed of his hearing rights. Dkt. No. 1 at 6. He also states that he requested the presence of several witnesses at his first hearing, but he does not clarify to whom he made that request. The states this fact in the same sentence in which he indicates that he asked Security Director Nickels to independently review his placement, id., and finishes the sentence with "Janel Nickel did not accommodate this request," id. at 4. It appears that he alleges that Nickel did not agree to independently review his placement, but he does not say anything about whether his request for witnesses was granted or denied, and by whom.

The plaintiff alleges only that Morgan found him guilty at the first hearing and that Schoenburg found him guilty at the second hearing, and that they did so based on "false allegations." Id. at 6. As the court noted above, it is not clear what the alleged false allegations were with regard to the first conduct report; with regard to the second one, he says that he was falsely accused of refusing to let Officer Grant remove his handcuffs and refusing to stay in DS2. Id. at 4. The fact that these defendants found the plaintiff guilty at the disciplinary hearing is not sufficient, standing alone, to state a claim that they violated his due process rights. In order for a hearing examiner to be constitutionally liable for adjudging an inmate guilty based on false evidence, the examiner has to know that the evidence was false. Wilson v. Greetan, 571 F.Supp.2d 948, 955 (W.D. Wis. 2007). An examiner "is not required to believe the prisoner in every instance or face liability for violating the prisoner's constitutional rights." Id. To prove that either of these defendants knowingly

10

relief on false evidence, the plaintiff has to demonstrate that they "did not honestly believe that the conduct report was valid, but . . . decided to find plaintiff guilty of it anyway." Id. The plaintiff has not demonstrated that here.

The plaintiff also alleges that he was "denied video evidence." Dkt. No. 1 at 6. As the court has noted, he does not explain what this evidence was, or what it would have showed. But an examiner does "not have a constitutional obligation to consider all of the evidence that plaintiff wanted him to consider." Wilson v. Geetan, 571 F. Supp. 2d at 956.

In short, the plaintiff has not alleged sufficient facts to support a claim that Morgan or Schoenburg violated his due process rights, and the court will dismiss them from the case.

### 3. *Defendant Goldsmith*

The plaintiff alleges that Goldsmith falsely stated that the plaintiff refused to follow his order to stop praying (or falsely alleged that he was praying under false pretenses). As a result, the plaintiff was given a major conduct report for disobeying an order. Even assuming that Goldsmith did make a false statement, lying does not violate the Constitution. Not even the fact that the plaintiff received a false conduct report or was ultimately found guilty of a false conduct report gives rise to a constitutional violation, on its own. "[A] prison disciplinary proceeding is not a criminal prosecution and 'the full panoply of rights due a defendant in such proceedings does not apply.'" Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984) (quoting Wolff v. McDonnell, 418 U.S. at 556). The procedural due process protections outlined

11

in Wolff are the major means of protection that prisoners have against such arbitrary government actions as those described by the plaintiff. Id. at 1142. The court already has found that the plaintiff has not alleged sufficient facts to demonstrate that Morgan or Schoenburg denied him those protections; he also fails to state a due process claim against Goldsmith, and the court will dismiss him as a defendant.

4.  *Defendant Boodry*

The only allegation against Boodry is that, following Goldsmith's conduct report, he, along with some unidentified corrections officers, placed the plaintiff in mechanical restraints and escorted him to segregation DSI, where the plaintiff was strip searched (the plaintiff does not state by whom) and placed into a cell. Dkt. No. 1 at 3. This allegation does not support a claim that Boodry violated any of the plaintiff's constitutional rights. The court will dismiss him as a defendant.

5.  *Potential First Amendment and Eighth Amendment claims*

The plaintiff alleges that, while he was in segregation, he was "restricted from attending Friday Jumuah services, could not properly make wudu for purification, was restricted from participating in the Eid Al Fitr feast and congregational prayer, was restricted from participating in Eid ul Adha feast and group prayer, and fed bagged meals once daily during the entire month of Ramadan." Dkt. No. 1 at 5. Further, the plaintiff alleges that he was forced to stay in an overcrowded cell and "sleep on the floor resulting in injury to [his] back." Id. at 4, 5.

12

These allegations may well give rise to a cause of action under the First Amendment for violation of the defendant's freedom to exercise his religion, or to a conditions-of-confinement claim under the Eighth Amendment. The question is, against whom? The plaintiff fails to identify *who* denied him the opportunity to participate in these religious activities and *who* forced him to sleep on the floor. He also fails to state whether he informed anyone (other than Officer Grant, who the plaintiff did not name as a defendant) that the cell was too crowded and that he had back problems that were made worse by sleeping on the floor. He is silent about what response, if any, he received to those complaints. As the court has explained, §1983 provides lawsuits against individuals based only on their own actions—they will not be held liable for the actions of others. The plaintiff cannot state a claim based on this alleged misconduct unless he identifies who is responsible for it.

If the plaintiff wants to proceed, he must file an amended complaint curing the deficiencies in the original complaint described above. He must file the amended complaint in time for the court to receive it on or before **October 28, 2016**. If he fails to file an amended complaint before the deadline, the court will dismiss this case without further notice to the plaintiff.

The amended complaint must bear the docket number assigned to this case, and must be labeled "Amended Complaint." The amended complaint takes the place of the prior complaint, and must be complete in itself without reference to the original complaint. See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1056-57 (7th Cir. 1998). In Duda, the

13

appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading[.]" Id. at 1057 (citation omitted). If the court receives an amended complaint by the October 28 deadline, the court will screen it pursuant to 28 U.S.C. §1915A.

III.     Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2).

The court also **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prisoner trust account the $322.53 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2).  The Secretary or his designee shall identify the payments with the case name and number.

The court further **ORDERS** that, if the plaintiff wants to file an amended complaint to address the problems discussed in this order, he must do so on or before **October 28, 2016**.

The court further **ORDERS** the plaintiff to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that failure to timely file documents may result in the court dismissing this case for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send a copy of this order to the warden of the institution where the plaintiff is currently incarcerated.

Dated in Milwaukee, Wisconsin this 27th day of September, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge