UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ORLANDO LARRY,**

                Plaintiff,

v.                                   **Case No. 16-cv-1108-pp**

**MICHAEL MEISNER, et al.,**

                Defendants.

---

**DECISION AND ORDER SCREENING THE
PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 10)**

---

The plaintiff, who is representing himself, is a former Wisconsin state prisoner. During the events described in the complaint and amended complaint, he was incarcerated at Columbia Correctional Institution. On September 27, 2016, the court screened the plaintiff's complaint and gave him the opportunity to file an amended complaint. Dkt. No. 8. The plaintiff did so on November 3, 2016. Dkt. No. 10. The court will screen the amended complaint pursuant to 28 U.S.C. §1915A.

    I.    <u>Screening the Plaintiff's Amended Complaint</u>

The law requires the court to screen complaints, including amended complaints, filed by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief

may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2

alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### A. The Plaintiff's Allegations

The plaintiff states that on August 1, 2011, he asked John Doe #3 if Ramadan meals could be served later to prevent breaking the fast too soon. Dkt. No. 10 ¶15. John Doe #3 said no, because the kitchen was on a set

3

schedule. Id. at ¶16. He also informed the plaintiff that the plaintiff could not pray. Id. at ¶17. The plaintiff explained to John Doe #3 that John Doe #3 was not supposed to interfere with their prayers, and then the plaintiff returned to his bunk row. Id. at ¶18. The plaintiff states that he later received cold stares from John Does #3 and #4. Id. at ¶19.

The next day, John Doe #4 instructed another inmate to stop praying. Id. at ¶25. The plaintiff intervened, and informed John Doe #4 that he and the other inmate were Muslim, that it was the month of Ramadan, and that it was the time for prayer. Id. at ¶26. John Doe #4 responded that there would be no praying, and he told the plaintiff that the plaintiff and the other inmate would receive a conduct report. Id. at ¶27.

John Doe #4 walked away, and the plaintiff spread out his prayer rug in his bunk row and began to pray. Id. at ¶29. When he was done, he joined another inmate in an effort to explain the requirement for prayer to John Doe #4. Id. at ¶31. John Doe #4 was hostile and adamant that they could not pray, so the plaintiff returned to his bunk row. Id. at ¶32.

Shortly thereafter, defendant Kevin Boodry entered the barracks with several other correctional guards, briefly spoke to John Doe #4, then asked the plaintiff to step into the hall. Id. at ¶34. Boodry placed the plaintiff in mechanical restraints and escorted him to the DS1 segregation housing unit. Id. at ¶35. After asking the plaintiff about what had happened, Boodry ordered one of the correctional officers to strip-search the plaintiff, then placed the

4

plaintiff in one of the segregation cells. Id. at ¶39. Boodry told the plaintiff that Boodry would return after his investigation. Id. at ¶40.

Boodry later asked the plaintiff if the plaintiff had anything to add to his account of the events; the plaintiff said that he did not. Id. at ¶42, 43. Boodry recorded the incident in a notice of placement in temporary lockup, a copy of which he provided to the plaintiff; the plaintiff states that Boodry did not include the plaintiff's version of the incident and did not inform the plaintiff of his rights. Id. at ¶44, 45. (It is not clear to the court to which "rights" the plaintiff refers.)

Later, John Doe #4 wrote the plaintiff a major conduct report, which indicated that the plaintiff disobeyed orders, was disorderly and disruptive, and engaged in group resistance and petitioning. Id. at ¶46. The plaintiff states that the chargers were false. Id.

The plaintiff indicates that staff advocate and defendant Mary Leiser informed him of his hearing rights and provided him with a copy of the conduct report. Id. at ¶49. The plaintiff chose to have a formal disciplinary hearing, and requested that John Doe #4, two inmates, and the chaplain be available as witnesses. Id. at ¶60. The plaintiff also asked that he be permitted to present video footage showing that John Doe #4 had asked another inmate, and not him, to stop praying. Id. at ¶61. The plaintiff separately wrote to defendant Janel Nickels and asked her to preserve the video footage, but she did not respond to his request. Id. at ¶62, 63.

5

Prior to the hearing, defendant Donald Morgan wrote the plaintiff and denied his request to have John Doe #4 and the chaplain present at the hearing. Id. at ¶64, 65. The plaintiff eventually appeared before the disciplinary hearing committee. Id. at ¶66. The plaintiff states that Morgan "suppressed" the requested video footage, and that John Doe #2 suppressed all mention of video evidence from the record. Id. at ¶67, 69. (The court is not clear what the plaintiff means by "suppressed.") Morgan found the plaintiff guilty of disobeying orders, dismissed the remaining charges, and sentenced the plaintiff to a disposition of 60 days in segregation. Id. at ¶68. The plaintiff timely appealed the decision. Id. at ¶82. John Doe #1 denied the appeal. Id. at ¶101.

At the conclusion of the disciplinary hearing, Morgan ordered John Doe #5 to escort the plaintiff from segregation housing unit DS1 to segregation housing unit DS2 for good conduct while on temporary lock-up status pending the disciplinary hearing. Id. at ¶70. When he arrived at segregation housing unit DS2, John Doe #6 assigned the plaintiff to an already occupied, one-man cell and told him to sleep on a mat on the floor, inches from the toilet. Id. at ¶71.

The plaintiff told John Doe #5 that he couldn't sleep on the floor because he had back problems, and that he couldn't fit his possessions in this cell because it was occupied. Id. at ¶72, 73. The plaintiff asked John Doe #5 if he could go back to segregation housing unit DS1. Id. at ¶74. John Doe #5 agreed to return the plaintiff to segregation housing unit DS1, but warned the plaintiff

6

that he might receive another conduct report if he returned there. Id. at ¶75. John Doe #5 then wrote the plaintiff a major conduct report, indicating that the plaintiff had refused the removal of his handcuffs and had refused to stay in segregation housing unit DS2. Id. at ¶76.

Leiser again advised the plaintiff of his disciplinary hearing rights and provided him a copy of the second conduct report. Id. at ¶78. The plaintiff indicated that he wanted a formal disciplinary hearing and that he wanted John Doe #5 to be present as a witness. Id. at ¶79, 80. The plaintiff also asked Leiser to help him gather medical records to confirm his back condition. Id. at ¶80. Leiser declined to do so, explaining that her job was limited. Id. at ¶81.

At his disciplinary hearing, the plaintiff presented the committee with medical records supporting his assertion of an existing back problem. Id. at ¶83. Defendant Thomas Schoenburg agreed that the plaintiff has a back problem. Id. at ¶85. Despite this, the committee (of which Schoenburg was a member) found the plaintiff guilty as charged, and sentenced him to a disposition of 120 days in segregation. Id. at ¶88. John Doe #2 refused to return the plaintiff's medical records to him; John Doe #2 said he needed them for the record. Id. at ¶89. The plaintiff states that the "Hearing Committee suppressed [his] records from its fact-finding statement then provided [him] with a copy of the decision." Id. at ¶90. The plaintiff timely appealed the decision to Meisner, who denied the appeal. Id. at ¶91, 102.

Eventually, John Doe #7 moved the plaintiff back to segregation housing unit DS2 and forced him to sleep on a mat on the floor of an already occupied,

one-man cell for the duration of his time in segregation. Id. at ¶92. The plaintiff states that his back was further injured, requiring him to receive steroid shots. Id. at ¶94.

Due to an institutional policy restricting inmates in segregation status from going to the chapel with the rest of the general population, the plaintiff was restricted from participating in Jumu'ah congregational prayers while he was in segregation. Id. at ¶95. Because the plaintiff was in segregation during the month of Ramadan, he was not able to participate in the Eid Al Fitr and Eid Ul Adha feasts. Id. at ¶96. The plaintiff was fed bagged meals once per day during the month of Ramadan. Id. at ¶98. Finally, during his time in segregation, the plaintiff was restricted from having enough water for him to perform his purifications in preparation for his prayers. Id. at ¶97.

Because the plaintiff had been found guilty of two major conduct reports, the program review committee increased the plaintiff's custody level from minimum to maximum security. Id. at ¶99.

**A. The Court's Analysis**

The plaintiff states that the defendants violated his right to freedom of religion under the First Amendment, his right to be free from cruel and unusual punishment under the Eighth Amendment, and his due process rights under the Fourteenth Amendment.

8

### 1. Defendants Nickels, Meisner, and John Doe #1

The plaintiff alleges that Nickels failed to respond to his request that she preserve video footage for use at his disciplinary hearing, and that Meisner and John Doe #1 affirmed the decisions of the disciplinary hearings officers.

Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. Hildebrandt v. Illinois Dept. of Natural Resources, 347 F.3d 1014, 1039 (7th Cir. 2003). Supervisory officials—superintendents of prisons, wardens, complaint examiners—are "entitled to relegate" to others day-to-day duties, such as conducting disciplinary hearings. Burks v. Raemisch, 555 F.3d 592, 595–96 (7th Cir. 2009).

On the disciplinary hearing form, the plaintiff requested asked to be allowed to present video evidence. The plaintiff separately requested, *apart from the disciplinary process*, that Nickels preserve the video footage. It is unclear why the plaintiff felt the need to include Nickels in the issues he had with other defendants, but she had no responsibility to get involved. Captain Morgan was presiding over the disciplinary hearing, and according to the plaintiff, he is the one who decided to "suppress" the video footage. Nickels' failure to respond to the plaintiff's letter when she had no involvement in the disciplinary hearing did not violate the plaintiff's constitutional rights. The "contention that any public employee who knows (or should know) about a wrong must do

9

something to fix it is just an effort to evade, by indirection, [the] rule that public employees are responsible for their own misdeeds but not for anyone else's." Id. at 596.

Similarly, Meisner and John Doe #1 did not become liable just because they affirmed the hearing officers' decisions; their actions did not cause or contribute to the alleged constitutional violation. Id.; George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."). The court will dismiss Nickels, Meisner, and John Doe #1 from the lawsuit.

2.   *Defendants Leiser, Morgan, and Schoenburg*

Disciplinary segregation can trigger due process protections. Marion v. Columbia Correction Inst., 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). When making the determination whether an inmate was entitled to such protections, courts analyze "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." Id. If conditions in segregation are significantly harsher than those in the normal prison environment, then a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. Id. at 697-98.

The plaintiff alleges that he was subjected to disciplinary segregation sentences of sixty days and 120 days. These are not extreme periods of time, and standing alone, do not trigger due process rights. Id. at 697 (citing Whitford v. Boglino, 63 F.3d 527, 533 (7th Cir. 1995)). The plaintiff also

10

alleges, however, that he was forced to share a one-man cell with another inmate and to sleep on a mat on the floor despite back problems, and that he was deprived of the opportunity to participate in religious feasts, prayers and rituals.

Taken as a whole at the screening stage, the plaintiff's allegations are sufficient to indicate that he may have been entitled to due process protections, because the conditions he endured while in segregation *may* have "impose[d] atypical and significant hardship[s] on [him] in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472 (1995).

Assuming that the plaintiff's allegations do trigger due process protections, the plaintiff still must allege that those protections were violated. In Wolff, the Supreme Court held that,

> [b]efore being deprived of a protected liberty interest [(i.e., here, to remain in general population)], a prisoner is entitled to (1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir. 1992) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974).

The plaintiff alleges that Leiser advised the plaintiff of his rights prior to both disciplinary hearings, and gave him copies of the conduct reports. He also alleges that Leiser declined to gather the plaintiff's medical records for him to use during his second disciplinary hearing. Leiser's conduct does not run afoul

11

of the Constitution. The Constitution guarantees the plaintiff the right to present evidence; it does not require that Leiser gather that evidence for the plaintiff. She provided him notice of the charges and of his rights, exactly as the Constitution requires. The court will dismiss the plaintiff's claim against her.

The plaintiff alleges that Morgan denied his request to present two of his requested witnesses, and he "suppressed" the video footage that the plaintiff wanted to use as evidence. Construing the plaintiff's allegations broadly (as the court must at this stage), the court finds that these allegations are sufficient to allow him to proceed on a due process claim against Morgan.

The plaintiff alleges that Schoenburg found him guilty at the second hearing despite agreeing that the plaintiff had a pre-existing back injury. Schoenburg's findings are not necessarily inconsistent; the fact that a person has a reason for violating disciplinary orders does not mean that he did not violate those orders. Regardless, the fact that Schoenburg found the plaintiff guilty at the disciplinary hearing is not sufficient to state a claim that he violated the plaintiff's due process rights. The court will dismiss Schoenburg.

      3.    *Defendant Boodry*

The plaintiff alleges that Boodry, along with some unidentified corrections officers, investigated the circumstances leading up to the plaintiff's first conduct report, placed the plaintiff in mechanical restraints, escorted the plaintiff to segregation (where the plaintiff was strip-searched), and completed the temporary lock-up notice, a copy of which he provided to the plaintiff.

12

These allegation do not support a claim that Boodry violated any of the plaintiff's constitutional rights. The plaintiff expresses concern that Boodry did not include his version of the events on the temporary lock-up notice, but nothing in the Constitution required Boodry to do so. The temporary lock-up notice notified the plaintiff of why he was being moved to segregation before the full statement of charges against him could be delivered and the disciplinary hearing could be held. The disciplinary hearing occurred, which is what the Constitution requires. The court will dismiss Boodry as a defendant.

4. *John Doe #2, John Doe #3, John Doe #4, and John Doe #5*

The plaintiff alleges that John Doe #2 "suppressed" all mention of the video footage from the second disciplinary hearing, and refused to return the plaintiff's medical records because the disciplinary committee needed them for the record. The court does not understand what the plaintiff means when he says John Doe #2 "suppressed" mention of the video footage. Regardless, the court has allowed the plaintiff to proceed against Morgan for his decision not to allow the video; the plaintiff has noted stated a claim against John Doe #2 on that basis. Nor has the plaintiff stated a claim based on his allegation that John Doe #2 would not return his medical records. Exhibits used during the course of a hearing must be preserved. If the plaintiff wanted the records, he could have made copies of them before submitting them. The court will dismiss John Doe #2.

The plaintiff alleges that John Doe #3 and John Doe #4 told him that he was not allowed to pray. He also alleges that John Doe #3 told him that his

13

meals could not be served later so that the plaintiff could avoid breaking his Ramadan fast too early. "Prisons must permit inmates the reasonable opportunity to exercise religious freedom. Maddox v. Love, 655 F.3d 709, 719 (7th Cir. 2011). The court will allow the plaintiff to proceed on his claims that John Doe #3 and John Doe #4 violated his rights under the First Amendment.[1]

The plaintiff also alleges that John Doe #4 and John Doe #5 wrote conduct reports that contained false charges. The fact that the plaintiff received a false conduct report, or ultimately was found guilty of a false conduct report, does not give rise to a constitutional violation. See Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984). The procedural due process protections outlined in Wolff are the main protections that prisoners have against arbitrary government actions. Id. at 1142. The court will dismiss John Doe #4 and John Doe #5.

5. *John Doe #6 and John Doe #7*

The only allegation against John Doe #6 is that when the plaintiff was moved from one segregation housing unit to another, John Doe #6 assigned the plaintiff to an already occupied cell and told him to sleep on a mat on the floor. It appears, though, that the plaintiff convinced John Doe #5 to take him back to the first segregation housing unit, so the plaintiff never stayed in that cell on

---

[1] If the defendants answer the plaintiff's complaint, the court will enter a scheduling order setting deadlines for discovery and the filing of dispositive motions. At that time, the plaintiff may conduct discovery in an attempt to identify the proper names of the Doe defendants. Once he identifies them, he may file a motion to substitute their proper names for the Doe placeholders.

14

John Doe #6's assignment. The limited actions of John Doe #6 do not give rise to a constitutional violation.

The plaintiff alleges that, after he was found guilty of his second conduct report, John Doe #7 assigned him to an already occupied cell and forced him to sleep on a mat on the floor for the entire time he was in segregation (he was sentenced to two terms in segregation, totaling 180 days). The plaintiff alleges that he has a back condition, and that being forced to sleep on the floor aggravated that injury. These allegations are sufficient to allow the plaintiff to proceed on a claim that John Doe #7 subjected the plaintiff to unconstitutional conditions of confinement, and that he was deliberately indifferent to the plaintiff's serious medical condition, both in violation of the Eighth Amendment.

6. *Miscellaneous Claims*

The plaintiff alleges that, due to an institutional policy governing inmates in segregation, he was restricted from going to the chapel with the rest of general population, was restricted from participating in Jumu'ah congregational prayers, was not able to participate in the Eid Al Fitr and Eid Ul Adha feasts, and was prohibited from obtaining enough water to perform purifications in preparation for his prayers.

It is not clear against whom the plaintiff states this claim (i.e., the plaintiff does not identify an individual who personally denied him these opportunities); he may not proceed against any of the named defendants in his or her individual capacity. To the extent the plaintiff is attempting to bring a

15

policy claim against Meisner in his *official* capacity as warden of the institution, he cannot. The plaintiff does not seek injunctive relief in connection with these allegations (because he is no longer housed at Columbia); he seeks only compensatory damages. The Eleventh Amendment bars such a suit. See Brunken v. Lance, 807 F.2d 1325, 1328-29 (7th Cir. 1986). The plaintiff does not state a claim based on these allegations.

In summary: the court will allow the plaintiff to proceed against John Doe #3 and John Doe #4 on a First Amendment claim, against Morgan on a Fourteenth Amendment claim, and against John Doe #7 on Eighth Amendment claims. The court will dismiss the remaining defendants.

II. Conclusion

The court **ORDERS** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, the clerk of court will send copies of the plaintiff's amended complaint and this order to the Wisconsin Department of Justice for service on defendant Donald Morgan.

The court also **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, defendant Donald Morgan shall file a responsive pleading to the amended complaint within sixty days of receiving electronic notice of this order.

16

The court **ORDERS** that defendants Michael Meisner, Kevin Boodry, Thomas Schoenburg, Janel Nickels, Mary Leiser, and John Does #1, 2, 5, and 6 are **DISMISSED**.

Dated in Milwaukee, Wisconsin this 23rd day of November, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge