ORLANDO LARRY,

        Plaintiff,

    v.                                    Case No. 16-cv-1108-pp

RUSSELL GOLDSMITH, *et al.*,

        Defendants.

**DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO 19), DENYING THE PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT OR ORDER (DKT. NO. 48), DISMISSING DEFENDANT MORGAN, ALLOWING THE PLAINTIFF TO PROCEED ON ONE CLAIM AGAINST DEFENDANTS FRIEND AND GOLDSMITH, LIFTING STAY ON DISCOVERY, AND SETTING DEADLINES**

The plaintiff, who is representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. On November 23, 2016, the court allowed the plaintiff to proceed on three claims: that defendant Donald Morgan violated his Fourteenth Amendment due process rights; that John Doe #3 (Matthew Friend) and John Doe #4 (Russell Goldsmith) violated his First Amendment right to exercise his religion; and that John Doe # 7 violated his Eighth Amendment rights. Dkt. No. 12. Defendant Morgan has filed a motion for summary judgment on the ground that the plaintiff did not exhaust his administrative remedies. Dkt. No. 19. Defendants Friend and Goldsmith asked to join that motion, dkt. no. 44, and the court granted that request, dkt. no. 47. The parties have briefed the motion. The

1

court later dismissed John Doe #7 as a defendant, because the plaintiff did not identify him within the required time. Dkt. No. 42 at 11.

The court will grant in part and deny in part defendant Morgan's motion for summary judgment, and will deny the plaintiff's motion for relief from judgment.

## I. RELEVANT FACTS[1]

### A. Factual Background of Case

During the time of the events described in the amended complaint, the plaintiff was incarcerated at Columbia Correctional institution. Dkt. No. 10 at ¶3. On August 1, 2011, the plaintiff asked defendant Matthew Friend[2] if Ramadan meals could be distributed later in the day to prevent breaking the fast too soon; Friend responded that the kitchen was on a set schedule so the plaintiff's request couldn't be accommodated. Id. at ¶¶15-16. Friend then told the plaintiff that the plaintiff would not be able to pray. Id. at ¶17. The plaintiff told Friend that the prison staff weren't supposed to interfere with the inmates' prayers, then returned to his bunk row without further incident. Id. at ¶18. Later, the plaintiff and a fellow Muslim inmate observed Friend and defendant Russel Goldsmith giving them cold stares as they walked by the officer control station. Id. at ¶19.

---

[1] The court takes the relevant facts regarding the merits of the case from the plaintiff's amended complaint. Dkt. No. 10. The court takes facts regarding exhaustion of remedies from Defendants' Proposed Findings of Fact, dkt. no. 21, and the Plaintiff's Declaration, dkt. no. 52.

[2] This order refers to the defendants previously identified as John Doe # 3 and John Doe # 4 by their names: Matthew Friend and Russel Goldsmith, respectively.

2

The next day, Goldsmith entered the barracks at the beginning of third shift, and made an immediate round to count the inmates. Id. at ¶20. Once he was finished, Goldsmith reported to the officer's desk. Id. at ¶21. Around this time, another inmate got up and began to pray inside of his own bunk row. Id. at ¶22. Goldsmith walked over to the inmate and told him that he had to stop praying. Id. at ¶¶23-25. The inmate continued to pray, and the plaintiff told Goldsmith that both he and the other inmate were Muslim, that it was Ramadan and that it was their prayer time. Id. at ¶26. Goldsmith told the plaintiff there would be no praying and that he would be issuing both inmates a conduct report. Id. at ¶27.

Goldsmith walked to the officer's control station and began speaking with another correctional officer, pointing towards the plaintiff's bunk row. Id. at ¶28. The plaintiff, still in his bunk row, then spread out his own prayer rug and began to pray. Id. at ¶29. When he finished praying, the plaintiff saw the other inmate speaking with Goldsmith at the officer's desk. Id. at ¶30. The plaintiff folded up his prayer rug, walked over to the desk, and tried to help explain the prayer tenet of Islam to Goldsmith. Id. at ¶31. The plaintiff indicates, however, that Goldsmith was "very hostile and adamant" that the inmates could not pray, so the plaintiff returned to his bunk row. Id. at ¶32.

Former defendant Lieutenant Kevin Boodry and several correctional officers entered the barracks, and after a short conversation with Goldsmith, asked the plaintiff to step out into the hallway. Id. at ¶¶33-34. Boodry placed the plaintiff in mechanical restraints and escorted him to "DS1" segregation

3

housing unit. Id. at ¶35. Boodry questioned the plaintiff, and the plaintiff explained to Boodry that he was Muslim, it was the month of Ramadan, and that he was being punished for praying. Id. at ¶¶36-37. Boodry then ordered another officer to strip search the plaintiff and, after the search, placed the plaintiff in a segregation cell. Id. at ¶¶38-39. Boodry told the plaintiff that Boodry would return after he conducted his investigation. Id. at ¶41. When Boodry returned, he woke the plaintiff, and asked the plaintiff if he had anything else to add to his account; the plaintiff said no. Id. at ¶¶41-42. The plaintiff indicated that he had nothing further to add. Id. at ¶43.

Goldsmith wrote the plaintiff a major conduct report, charging that the plaintiff disobeyed orders, was disorderly and disruptive, and engaged in group resistance and petitioning. Id. at ¶46. Staff advocate Mary Leiser informed the plaintiff of his hearing rights and provided him with a copy of the conduct report. Id. at ¶49. The plaintiff chose to have a formal disciplinary hearing, and requested that Goldsmith, two inmates and the chaplain be available as witnesses. Id. at ¶50, 60. He also asked that he be permitted to present video footage showing that Goldsmith had asked another inmate, and not him, to stop praying. Id. at ¶61. Prior to the hearing, defendant Donald Morgan—a caption at Columbia Correctional—wrote the plaintiff, denying the plaintiff's request to have Goldsmith and the chaplain present at the hearing. Id. at ¶¶64, 65. The plaintiff eventually appeared before the disciplinary hearing committee. Id. at ¶66. The committee did not permit him to present the video footage. Id. at ¶¶67, 69. Morgan found the plaintiff guilty of disobeying orders, dismissed the

4

remaining charges and sentenced the plaintiff to a disposition of sixty days in segregation. Id. at ¶68. The plaintiff timely appealed the decision, and staff denied his appeal. Id. at ¶¶82, 101.

After the disciplinary hearing, Morgan ordered former defendant John Doe #5 to escort the plaintiff from segregation housing unit DS1 to segregation housing unit DS2. Id. at ¶70. When the plaintiff arrived, former defendant John Doe #6 assigned him to an already occupied one-person cell, telling him to sleep on a mat on the floor. Id.at ¶71. The plaintiff told John Doe #5 that he couldn't sleep on the floor because he had back problems, and explained that he and his property wouldn't fit in the already-occupied cell. Id. at ¶¶72-73. The plaintiff asked if he could go back to unit DS1; John Doe #5 agreed, but warned the plaintiff that he could receive another conduct report if he returned to DS1. Id. at ¶¶ 74-75. John Doe #5 did write the plaintiff a conduct report, indicating (falsely, according to the plaintiff) that the plaintiff had refused the removal of his handcuffs and refused to stay in unit DS2. Id. at ¶76.

For the second conduct report, former defendant Mary Leiser again advised the plaintiff of his disciplinary hearing rights and provided him a copy of the conduct report; and the plaintiff again indicated that he wanted a formal disciplinary hearing. Id. at ¶¶78-79. He also stated that he wanted John Doe #5 to be present as a witness. Id. at ¶80. At his disciplinary hearing, the plaintiff presented the committee with medical records supporting his assertion of an existing back problem. Id. at ¶83. The committee found the plaintiff guilty, and sentenced him to 120 days in segregation. Id. at ¶88. The plaintiff

5

timely appealed the decision to former defendant Warden Michael Meisner, who denied the appeal. <u>Id.</u> at ¶91, 102.

The plaintiff eventually ended up back in unit DS2, where he had to sleep on a mat on the floor of an already-occupied one-person cell for the duration of his time in segregation. <u>Id.</u> at ¶92. Because of an institutional policy that restricts inmates in segregation status from going to the chapel with the rest of the general population, the plaintiff could not participate in Jumu'ah congregational prayers while he was in segregation. <u>Id.</u> at ¶95. He also could not participate in the Eid Al Fitr and Eid Ul Adha feasts during the month of Ramadan and received bagged meals once per day. <u>Id.</u> at ¶¶96, 98. While in segregation, the plaintiff did not have access to enough water for him to perform his purifications in preparation for his prayers. <u>Id.</u> at ¶97.

B.    <u>Complaints and Appeals</u>

The plaintiff filed two complaints through the Inmate Complaint Review System (ICRS) that related to his claims. Dkt. No. 21 at ¶¶2, 7. He filed complaint CCI-2011-15443 (Complaint 15443) on August 3, 2011. <u>Id.</u> at ¶2. In it, the plaintiff complained of being transferred to Temporary Lock Up ("TLU") and strip searched over "completely false and malicious" allegations related to the Conduct Report that Goldsmith issued him. Dkt. No. 22-2 at 7. Because the plaintiff had not yet completed the appeal process for the Conduct Report, the Institution Complaint Examiner (ICE) rejected his complaint as "outside the scope of her authority." Dkt. No. 21 at ¶4. The plaintiff appealed the rejection to the warden, claiming that his complaint raised issues separate from the

6

disciplinary process, but the warden affirmed the rejection. Id. at ¶ 5. The plaintiff did not file any other complaints challenging the Conduct Report. Id. at ¶ 6.

The plaintiff also submitted complaint CCI-2011-23386 (Complaint 23386). Id. at ¶ 7. In it, the plaintiff complained that his request for video footage for the disciplinary hearing was not in his security file. Id. The Inmate Complaint Examiner ("ICE") dismissed the complaint at the institutional level. Id. at ¶8. The Security Director stated that the plaintiff's file did not contain a request because she never received an interview request. Id. The plaintiff never appealed the dismissal to the Correction Complaint Examiner's (CCE) office. Id.

## II. DISCUSSION

### A. Defendants' Motion for Summary Judgment for Failure to Exhaust

#### 1. *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

7

A party asserting that a fact cannot be disputed, or is genuinely disputed, must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### 2. *The Exhaustion Requirement*

According to the Prison Litigation Reform Act (PLRA) (which applies in this case because the plaintiff was incarcerated when he filed his complaint), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Various important policy goals give rise to the rule requiring administrative exhaustion, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record and reducing the scope of litigation. Smith v. Zachary, 255 F.3d 446, 450-51 (7th Cir. 2001).

8

The Department of Corrections' Inmate Complaint Review System provides the administrative process for inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a). Before an inmate can file a lawsuit, he must exhaust all administrative remedies that the DOC has promulgated by rule. Wis. Admin. Code §DOC 310.05. Inmates should use the ICRS to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code §DOC 310.08(1).

In order to use the ICRS, an inmate must file a complaint with the ICE within fourteen days after the occurrence that gives rise to the complaint. Wis. Admin. Code §§DOC 310.07(1) & 310.09(6). Complaints submitted later than fourteen days after the event may be accepted for good cause. Wis. Admin. Code §DOC 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within ten days following receipt of the recommendation. Wis. Admin. Code §DOC 310.12. Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the corrections complaint examiner ("CCE"). Wis. Admin. Code §DOC 310.13(1). The CCE reviews the appeal and makes a recommendation to the secretary of the DOC. Wis. Admin. Code §DOC 310.13(6). The Secretary may accept, adopt or reject the CCE's

9

recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code §DOC 310.14(2).

The ICE rejects some inmate complaints at the institution level. Wis. Admin. Code. §DOC 310.11(5). The CCE does not review a rejected complaint. Wis. Admin. Code §DOC 310.13(3). Instead, the appropriate reviewing authority reviews only the basis for rejecting the complaint; he or she does not examine the merits of the complaint. Wis. Admin. Code §DOC 310.11(6). The reviewing authority's decision is final. Id.

"An inmate may not use the ICRS to raise . . . . any issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303." Wis. Admin Code §DOC 310.08(2)(a). After the disciplinary process has concluded, an inmate may appeal a "disciplinary decision," including procedural errors, to the warden within ten days after receiving a copy of the decision. Wis. Admin. Code §DOC 303.82(1). The warden then must review all records and forms relating to the appeals and make a decision within sixty days. Wis. Admin. Code §DOC 303.82(2). The warden's decision is final as it relates to sufficiency of the evidence. Wis. Admin. Code. §DOC 303.82(3). An inmate may, however, appeal claims of procedural error under the ICRS. Id. (citing Wis. Admin. Code §DOC 310.08(3)).

3.  *The Court's Analysis*

The court allowed the plaintiff to proceed on a claim that defendant Morgan violated his Fourteenth Amendment due process rights by preventing him from using video footage at his disciplinary hearing, and  a claim that

10

defendants Friend and Goldsmith violated his First Amendment rights by telling him that he could not pray and that his Ramadan meal could not be served later in the day. The defendants argue that the court should grant summary judgment in their favor on these claims, because the plaintiff has failed to exhaust his administrative remedies. While they acknowledge that the plaintiff filed two complaints through the ICRS system, the defendants argue that those two complaints did not exhaust the plaintiff's remedies. The court agrees that the plaintiff has failed to exhaust his due process claim and his First Amendment claim related to Ramadan meals. The court finds, however, that the plaintiff did exhaust all remedies available to him related to his First Amendment claim concerning his ability to pray.

Complaint 15443, which the plaintiff filed after Boodry moved him TLU and before Goldsmith issued the conduct report, reads:

> Last night I was getting ready to perform my prayers . . . . I observed the 3rd shift commanding officer approach one of the Muslims, who was praying at the time, and tell him that he could not pray. Since he was in the process of praying I intervened on his behalf and explained to the officer that we are allowed to pray according to our prayer schedule and that it was time for us to pray. The officer then threatened that we would both receive conduct reports. I then started to offer my prayers. It's true that the dayroom was closed at the time. However we were not praying in the dayroom but in between our bunk rows. After completing my prayers I observed the officer talking to 2 of the Muslims about the issue so I joined them. I then beg[a]n to "peacefully" explain the details of our religious practices as they related to our prayer habits. In the process of me trying to educate the officer on our obligations to be praying at the designated times and that our religious rites, in this respect, was already pre-approved and authorized by the department he only reiterated that we cannot pray when the dayroom is closed and anyone caught doing so would receive a conduct report and that was his bottom line. We all departed with the understanding

11

that that was his position and ours was that we needed to be praying at the designated times. We all departed "peacefully," "no-one" became loud or disruptive at "anytime." About 10 or 15 minutes later I was cuffed and taken to the TLU where I was stripped searched and placed in a cell for allegedly group resistance [and] petitions and disruptive conduct. These allegations are completely false and malicious.

Dkt. No. 22-2 at 7.

Complaint 23386 states:

On the above mentioned date [November 10, 2011] I did a file review on my security file and notice[d] that my request to the security director requesting that video footage of the incident revolving around conduct report #2096378 (in which I was placed in TLU for praying) be used as evidence at the hearing was oommitted from the file. I am therefore submitting this complaint to the ICE to address this issue. Attached to this complaint is a copy of an interview request slip addressing this issue with the security director.

Dkt. No. 22-3 at 6.

a.     The Due Process Claim

The plaintiff has alleged that defendant Morgan violated his due process rights under the Fourteenth Amendment when he denied the plaintiff's request to present certain witnesses and video footage at his disciplinary hearing. Neither of his ICRS complaints exhausts the plaintiff's this claim.

Goldsmith's conduct report regarding what happened on the day the plaintiff tried to pray indicates that the incident took place on August 2, 2011, and is dated August 3, 2011. Dkt. No. 22-2 at 8. In complaint 15443, the plaintiff confirmed that the incident that gave rise to his complaint took place on August 2, 2011. Dkt. No. 22-2 at 7. He signed that complaint on August 3, 2011. Id. Complaint 15443 does not mention Morgan, or the disciplinary

12

hearing, or the plaintiff's inability to show video or call witnesses. It couldn't have. That is because the disciplinary hearing on Goldsmith's August 3, 2011 conduct report had not taken place at the time the plaintiff filed complaint 15443. The record does not reveal when the hearing took place, but it had to have been *after* the Goldsmith filed the conduct report, which was on August 3, 2011—the day *after* the incident about which the plaintiff complaint 15443.

Complaint 23386 indicates that the incident that gave rise to that complaint occurred on November 10, 2011. Dkt. No. 22-2 at 6. The plaintiff signed and dated this complaint on November 15, 2011. Id. While this complaint does talk about video footage, it does not mention Morgan. It does not say that anyone denied the plaintiff the ability to present video footage at the disciplinary hearing. All it says is that the plaintiff had discovered that his request to use the video footage was not in his security file. The complaint does not advise anyone that the plaintiff believed that Morgan, or anyone else, denied him the ability to present video footage at his disciplinary hearing.

So—although the plaintiff filed at least one complaint after the hearing, that complaint did not mention his allegation that he was denied the opportunity to present video. The plaintiff also had another option for raising this issue—he could have raised it in his appeal of the disciplinary sanction Morgan imposed. Wis. Admin. Code §303.82(1). By his own admission, however, he did not raise the issue then. Though the plaintiff did appeal the sanction, the warden reviewed it for sufficiency of the evidence, *not* for procedural errors. Dkt. No. 50 at 5. The plaintiff is correct that the warden's

13

decision constituted a final order sufficient to exhaust remedies, but it was a final order on whether there was sufficient evidence to discipline him, not whether he was denied the ability to present video evidence or witnesses.

The plaintiff argues that he did not have an available administrative remedy because he already had filed complaint 15443, and that he was not aware that he could have filed another complaint "challenging the conduct report if he was not satisfied with the wardens [sic] decision on appeal." Dkt. No. 50 at 7. The plaintiff also argues that he did not appeal ICRS complaint 23386—the complaint about the request for video footage missing from his file—because it would have been futile to do so. Dkt. No. 50 at 9. These arguments miss the point. Complaint 15443 did not involve the denial of the plaintiff's ability to present video footage at his hearing. Nor did complaint 23386. The plaintiff had the ability, as soon as the disciplinary hearing was over, to file a complaint specifically complaining that he hadn't been allowed to present the video footage. He didn't—not in complaint 23386, and not in any other complaint. All the plaintiff needed to do to exhaust his remedies on his due process claim was to file a complaint alleging that he had not been allowed to present the video footage. He never did, and that constitutes failure to exhaust.

The court will grant summary judgment in favor of Morgan on the ground that the plaintiff failed to exhaust his administrative remedies on the due process claim he has alleged against Morgan.

2.     The First Amendment Free Exercise Claims

14

The court allowed the plaintiff to proceed on claims that Friend and Goldsmith told him that he was not allowed to pray, and that Friend told him that "his meals could not be served later so that the plaintiff could avoid breaking his Ramadan fast too early." Dkt. No. 12 at 13-14.

The defendants pointed out in their motion, and the court agrees, that neither of the plaintiff's ICRS complaints mention anything about Ramadan or meals or the dietary requirements of Islam. Dkt. No. 20 at 9. The plaintiff never raised that issue in an ICRS complaint. He has not exhausted this claim, and the court will grant summary judgment in favor of Friend on this component of the plaintiff's First Amendment claim.

Complaint 15443, however, *did* raise the plaintiff's claim that he was not allowed to pray. The ICE rejected the complaint under Wis. Admin Code §DOC 310.08(2)(a), which says that a prisoner cannot file a complaint raising any issue that is "related to a conduct report" before he completes the disciplinary process. Dkt. No. 22-2 at 2. The plaintiff appealed, and the reviewing authority agreed with the ICE. Dkt. No. 22-2 at 4.

The defendants asserted in their summary judgment brief that complaint 15443 "allege[d] that 'last night' [the plaintiff] received a conduct report for praying." Dkt. No. 20 at 7. From this, they draw the conclusion that complaint 15443 was a grievance about the conduct report. They state that, because §DOC 310.08(2)(a) prohibits an inmate from complaining about an issue related to a conduct report before the disciplinary process for the conduct report is over, his complaint "operate[d] outside of the rules for exhaustion as

15

described in the administrative code." Id. at 8. They acknowledge that the plaintiff appealed the rejection of complaint 15443 to the warden, "claiming it was submitted as a civil rights grievance separate and unrelated to the disciplinary process." Id. Nonetheless, they argue that the complaint was procedurally defective, and that the warden properly affirmed the rejection of the complaint. Id.

The court disagrees with the defendants on two fronts. First, the defendants read complaint 15443 too narrowly. Complaint 15443 does not state that the plaintiff was complaining about receiving a conduct report. It makes a number of allegations. It talks about how the plaintiff (and another inmate) were trying to pray, and how the defendants prevented them from doing so. It talks about how the plaintiff tried to explain his religious rights to the officers. It disagrees that the plaintiff or the other inmate were disruptive. It notes that the plaintiff was cuffed, taken to TLU and strip-searched. And it concludes by arguing that any allegation that he was resistant or disruptive are false. Dkt. No. 22-2 at 7. It does appear that the plaintiff was complaining about the allegations in the conduct report. But he was also complaining about his inability to pray.

This leads to the court's second disagreement with the defendants' argument. The defendants rely on §DOC 310.08(2)(a), which prohibits an inmate from complaining about an issue related to a conduct report until the disciplinary process for that report is complete, to support their argument that complaint 15443 was procedurally defective. As another Wisconsin federal

judge has noted, however, "the phrase 'related to' is vague and potentially very broad." <u>Labrec v. Walker</u>, No. 16-cv-774-jdp, 2017 WL 4174918, *2 (W.D. Wis. Sep. 20, 2017). The defendants interpret this language as broadly as possible; they argue that if the complaint makes any mention of the conduct report, or the allegations in the conduct report, the inmate cannot file the complaint until after the disciplinary proceeding on the conduct report is complete.

The court sees two problems with this broad interpretation. First, it requires an inmate like the plaintiff, who believes his rights were violated and who received a conduct report in connection with the events that he believes violated those rights, to parse his claims with lawyerly precision. It is not clear how a plaintiff can say, "I think I had right to pray, and the officers violated that right," without saying, "I do not think I should have received a conduct report for praying," or "I should not have received a conduct report for trying to explain that I had permission to pray."

The second problem relates to the first. Under the defendants' interpretation of the "related to" language, if such a plaintiff mentions anything in the complaint that can be construed as objecting to the conduct report, he loses any ability to complain about the violation of his rights. This is because §DOC 310.08(3) instructs prisoners that once the disciplinary process for the conduct report is over, they may file a grievance "to challenge only the procedure used . . . in the disciplinary process." Therefore, "inmates challenging conduct reports can only file grievances relating to the procedure of

the disciplinary process—*not* the constitutionality" of their treatment. <u>Rivera v. Lindmeier</u>, No. 13-C-124, 2013 WL 6806188, *3 (E.D. Wis. Dec. 20, 2013).

The defendants' interpretation of the "related to" language in §DOC 310.08(2)(1) creates an impossible situation for any inmate who suffers a denial of rights during an incident that gives rise to a conduct report. Such an inmate would not be able to file a grievance about the denial of rights before the disciplinary process for the conduct report was over. He could not file a complaint about the denial of his rights, because under the defendants' interpretation of "related to," the denial of rights was "related to" the allegations that he'd violated prison policies. The inmate could not file a grievance about the denial of his rights after the conclusion of the disciplinary process, because at that point, the subject of the grievance would be limited to the procedure used during the disciplinary process. At that point, the complaint would not relate to the disciplinary process.

"The grievance process is not intended to be a game of 'gotcha' or 'a test of the prisoner's fortitude or ability to outsmart the system.'" <u>Shaw v. Jahnke</u>, 607 F. Supp.2d 1005, 1010 (W.D. Wis. 2009) (quoting <u>Vasquez v. Hilbert</u>, 07-cv-723-bbc, 2008 WL 2224394, *3 (W.D. Wis. May 28, 2008)). "Rather, it is meant to provide notice to prison administrators of a problem so that they have an opportunity to address it without litigation." <u>Id.</u> (citing <u>Porter v. Nussle</u>, 534 U.S. 516, 524-25 (2002); <u>Strong v. David</u>, 297 F.3d 646 (7th Cir. 2002)). The defendants' interpretation creates just such a "gotcha" for an inmate like the plaintiff. It effectively denies him the ability to complain about his belief that he

18

was denied the ability to pray, because of the fact that he received a conduct report as a result of his interactions with the officers about their denial of his ability to pray.

The court in Labrec used a more common-sense interpretation of the "related to" language in §DOC 310.08(a)(2), one that avoids the "gotcha" created by the defendants' interpretation. Judge Peterson, adopting an interpretation used by Judge Griesbach in an earlier case, concluded that the "related to" requirement was mean to prevent inmates from "us[ing] the ICRS grievance process to contest the merits of their disciplinary actions." Labrec, 2017 WL 4179418, at *2 (quoting Rivera, 2013 WL 6806188, at *3). This court agrees that that is a more appropriate reading of the "related to" language, and one that avoids the Catch-22 created by the defendants' interpretation.

The court concludes that the plaintiff *did* provide notice to the prison administrators that he was denied his First Amendment right to exercise his religion by conducting his prayers. He provided that notice in complaint 15443. He also provided it when he appealed the rejection of that complaint, explaining specifically that he'd meant to challenge the denial of his civil rights. Dkt. No. 22-2 at 10. The court concludes that the plaintiff exhausted his administrative remedies on that claim, and will deny Friend and Goldsmith's motion for summary judgment as to the plaintiff's claim that they denied his him his First Amendment right to freely exercise his religion by prohibiting him from praying on August 2, 2011.

19

B.    The Plaintiff's Motion for Reconsideration

The plaintiff has also filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 60(b)(1), requesting that the court reconsider its decision to dismiss John Doe #7 as a defendant. Dkt. No. 48. The court originally ordered the plaintiff to identify the Doe defendants by March 3, 2017. Dkt. No. 17. Over three weeks after that deadline, the court received from the plaintiff a motion to extend that deadline, in which he indicated that he'd not received responses to his discovery requests. Dkt. No. 18. Despite the fact that the plaintiff filed his motion after the deadline had passed, the court granted the motion, because the plaintiff identified some of the Doe defendants (Friend and Goldsmith) on April 3, 2017. Dkt. Nos. 23, 42. The plaintiff did not identify Doe #7 when he identified Friend and Goldsmith, which is why the court dismissed Doe #7. Dkt. No. 42 at 3.

In his motion to reconsider that order, the plaintiff argues the defendants did not reveal Doe #7's identity while discovery was in process (he alleges that Morgan "refused" to reveal Doe #7's identity), and that since then, the court has stayed discovery. Dkt. No. 48 at 4. He argues that it is not his fault that he has not been able to learn Doe #7's identity. Id. He asks the court to lift the discovery stay temporarily, until the defendants identify Doe #7. Id.

The court accepts the plaintiff's assertion that it is not his fault that he has not been able to discover Doe #7's identity. But it would be futile for the court to vacate its order dismissing Doe #7, or to allow the plaintiff to conduct further discovery regarding Doe #7's identity. The plaintiff alleged that Doe #7

20

violated his Eighth Amendment rights by making him sleep on the floor of a one-man cell that was occupied by another inmate. Dkt. No. 10 at 14, 19. In analyzing the defendants' allegations of failure to exhaust administrative remedies, the court reviewed the plaintiff's inmate complaint history—specifically the complaints he filed after August 2, 2011. Dkt. No. 22-1. The history shows that the plaintiff filed thirteen complaints between August 2, 2011 and October 22, 2014. Id. at 2. None of those complaints mentioned sleeping on the floor, or being forced to sleep in a one-man cell with another inmate, or injuries to the plaintiff's back. He complained about being transferred, having complaints returned, various problems with his parole review commission hearings, not having toothpaste for sensitive teeth, not receiving a law library pass, and harassment. But he did not complain about being forced to sleep on the floor of a one-man cell occupied by another inmate.

Because the plaintiff did not exhaust his administrative remedies on the claim he alleged against Doe #7, he cannot proceed on that claim. That means there is no need for him to identify Doe #7. The court will deny the plaintiff's motion.

## III.    CONCLUSION

The court **GRANTS IN PART AND DENIES IN PART** the defendants' motion for summary judgment. Dkt. No. 19.

The court **DENIES** the plaintiff's motion for relief from judgment or order. Dkt. No. 48.

The court **DISMISSES** defendant Donald Morgan.

21

The court **DISMISSES** the plaintiff's First Amendment claim that Friend would not allow him to have his Ramadan meals later in the day to avoid breaking his fast.

The court **ORDERS** that the plaintiff may proceed on his claim that defendants Friend and Goldsmith violated his First Amendment rights when they did not allow him to pray on August 2, 2011.

The court **ORDERS** that the stay it imposed on discovery as to the merits of the plaintiff's claims (dkt. no. 27) is **LIFTED**.

The court **ORDERS** that the parties shall complete all discovery on the merits of the plaintiff's First Amendment claim against Friend and Goldsmith by the end of the day on **Friday, July 13, 2018.**

The court **ORDERS** that any party wishing to file a dispositive motion regarding the one claim remaining in the case shall do so by the end of the day on **Friday, August 17, 2018.** The deadline for filing briefs in opposition to a motion for summary judgment is **September 21, 2018**.

Dated in Milwaukee, Wisconsin this 30th day of March, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**

22